UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.  )<br>)<br>BARRY PLUNKETT, JR.,  )<br>    Defendant.  ) | Cr. No. 20-10140-MLW |

MEMORANDUM AND ORDER

WOLF, D.J.                                                      September 4, 2025

In 2022, defendant Barry Plunkett was convicted of bank fraud, tax evasion, and aggravated identity theft for defrauding lenders to obtain mortgages and sentenced to serve 78 months in prison. In June 2024, Mr. Plunkett filed a pro se Motion to Vacate, Set Aside, or Correct Judgment or Sentence pursuant to 28 U.S.C. §2255 (the "§2255 Motion"). Dkt. No. 255.[1] Mr. Plunkett's central claim is that he is actually innocent of aggravated identify theft under the Supreme Court's June 8, 2023 decision in Dubin v. United States, 599 U.S. 110, 143 S. Ct. 1557 (2023), which interpreted 18 U.S.C. §1028A(1)(a). The government opposes Mr. Plunkett's §2255 Motion. See Dkt. Nos. 263, 266. For the reasons stated in the government's submissions and amplified in this Memorandum and Order, the §2255 Motion is being denied.

---

[1] Mr. Plunkett contemporaneously filed an emergency motion to stay forfeiture proceedings pending resolution of the 2255 Motion (the "Emergency Motion"), Dkt. No. 254, which the government opposed, Dkt. No. 256, and the court denied, Dkt. No. 257.

## I. BACKGROUND

### A. Criminal Proceedings

On March 4, 2022, husband and wife co-defendants Barry and Nancy Plunkett pled guilty to bank fraud and aggravated identity theft relating to a scheme to defraud lenders to obtain mortgages. See Clerk's Note, Dkt. No. 78. Mr. Plunkett also pled guilty to tax evasion. See Barry Plunkett Judgment, Dkt. No. 135, at 2. As part of his guilty plea, Mr. Plunkett waived his right to appeal or challenge any sentence of 78 months or less. Mar. 4, 2022 Rule 11 Hr'g Tr., Dkt. No. 127, at 5.

On August 25, 2022, the court sentenced Mr. Plunkett to a term of 78 months in prison, which included a term of 54 months for the bank fraud and tax evasion convictions, and a consecutive 24-month prison term for the aggravated identity theft conviction, to be followed by a term of supervised release. See Aug. 25, 2022 Sent'g Hrg. Tr., Dkt. No. 148, at 129-30. Among other things, the court also ordered the Plunketts to pay, jointly and severally, restitution in the amount of $3,054,759.71 to the financial institution victims and ordered Barry Plunkett to pay $181,707.00 in restitution to the Internal Revenue Service. See Barry Plunkett Amended Judgment, Dkt. No. 282, at 6-9; Nancy Plunkett Amended Judgment, Dkt. No. 281, at 6-9. The court entered Orders of Forfeiture (Money Judgment) in the amount of $3,221,408 for both defendants. See Barry Plunkett Order of Forfeiture (Money

Judgment), Dkt. No. 135-1; Nancy Plunkett Order of Forfeiture (Money Judgment), Dkt. No. 142-1. Mr. Plunkett did not appeal.

B. <u>Preliminary Forfeiture Proceedings</u>

On September 1, 2022, the court issued a Preliminary Order of Forfeiture for Substitute Assets in Satisfaction of Order of Forfeiture (Money Judgment), Dkt. No. 146. More specifically, the court ordered that real property located at 100 Washington Avenue, Hyannis Port, Massachusetts, and 112 Realty Trust II (the "Trust") be forfeited to the government. <u>See</u> <u>id.</u> at 3.[2] The house at 100 Washington Avenue was held by the Trust. Barry Plunkett was one of three beneficiaries of the Trust.

C. <u>The Emergency Motion and the Instant §2255 Motion</u>

In June 2024, as noted earlier, Barry Plunkett filed <u>pro se</u> his Emergency Motion seeking an injunction staying forfeiture proceedings pending the resolution of his §2255 Motion, Dkt. No. 254, together with his §2255 Motion, Dkt. No. 255.

In the Emergency Motion, Mr. Plunkett argued that he would suffer irreparable harm if the forfeited property was sold before the court decided his §2255 Motion. <u>See</u> <u>id.</u> at 1-2. The government

---

[2] The Trust originally owned real property formerly known as 112 Washington Avenue, Hyannis Port, MA 02647, which consisted of two parcels. In 2015, the two parcels were separated into a "Rear Tract" consisting of a carriage house known by the address of 112 Washington Avenue, and a "Front Tract," where the main house is located, known by the address of 100 Washington Avenue. <u>See</u> Motion for Final Order of Forfeiture, Dkt. No. 276, at 2.

3

opposed the Emergency Motion, arguing that Mr. Plunkett could not challenge a forfeiture order through a §2255 Motion, that he waived his right to challenge forfeiture orders in his plea agreement, and that the motion lacked merit. See Opposition to Emergency Motion, Dkt. No. 256, at 1-6. In an order dated June 25, 2024, the court denied the Emergency Motion. Order, Dkt. No. 257.

In the §2255 Motion now at issue, Mr. Plunkett argues that, in view of the Supreme Court's recent decision in Dubin v. United States, 599 U.S. 110 (2023), interpreting the scope of 18 U.S.C. §1028A(a)(1), he is actually innocent of the offense of aggravated identity theft and that his guilty plea should be vacated for several reasons. See §2255 Motion, Dkt. No. 255, at 1-2, 17-19. The government opposes the §2255 Motion. See Preliminary Opposition, Dkt. No. 263; Suppl. Opposition, Dkt. No. 266.

D. Subsequent Forfeiture Proceedings and Settlement

On August 15, 2023, the court held that Mr. Plunkett had a forfeitable interest in the Hyannis Port property equal to his one-third interest in the Trust. See Aug. 15, 2023 Mem. & Order, Dkt. No. 192, at 10. Several parties--including the government, banks, insurance entities, Plunkett's siblings, and the Trust itself--subsequently asserted competing interests in the forfeited

real property, which was at the heart of the bank fraud charges to which the Plunketts pled guilty. See id. at 2-3.[3]

On August 28, 2023, at the parties' request, the court referred the parties to mediation before Magistrate Judge Paul Levenson. See Order, Dkt. No. 198. On February 28, 2024, at the second mediation session, the parties reached what they agreed was a binding settlement agreement in principle to settle their disputed claims to the forfeited real property. See Report of ADR Provider, Dkt. No. 240; Feb. 28, 2024 ADR Hr'g Tr., Dkt. No. 246 (Sealed), at 21-24. The agreement provided for the sale of the Rear Tract by June 30, 2024, see id. at 15, and, if such sale was not possible, the sale of the entire property by September 30, 2024. See id. at 10.

The parties subsequently entered into a Settlement Agreement formalizing their agreement concerning the disposition of the real property. See Settlement Agreement, Dkt. No. 276-1. The court's September 1, 2022 Order was later amended to allow for the sale of the real property. Motion to Amend Restraining Order, Dkt. No.

---

[3] The following submissions were filed in connection with the contested forfeiture proceedings that have since been resolved by agreement: (a) The Petition of Third Parties Requesting a Hearing to Adjudicate the Validity of Interests in Properties Subject to Forfeiture (Dkt. No. 161); (b) Metropolitan Life Insurance Company's Motion for Hearing to Adjudicate the Validity of Interests in Properties Subject to Forfeiture (Dkt. No. 169), and (c) the government's Motion for Writ of Entry as to Barry Wayne Plunkett, Jr., Nancy Plunkett (Dkt. No. 174).

267, at 3, allowed Order, Dkt. No. 267. The court then issued a Final Order of Forfeiture as to each of the Plunketts, Dkt. Nos. 279, 280.

## II. THE §2255 STANDARDS

Pursuant to 28 U.S.C. §2255, a federal prisoner may move to vacate, set aside, or correct his sentence. Relief may be granted, on the grounds that (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence is otherwise "subject to collateral attack." 28 U.S.C. §2255(a); see Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994). In seeking to collaterally attack a conviction, the burden is on the petitioner to show entitlement to relief. See David v. United States, 134 F.3d 470, 474 (1st Cir. 1998), including entitlement to an evidentiary hearing, see Cody v. United States, 249 F.3d 47, 54 (1st Cir. 2001); see also Rules 4 and 8 of the Rules Governing Section 2255 Proceedings.

"Evidentiary hearings on §2255 petitions are the exception, not the rule," so there is a "fairly heavy burden" on the petitioner to demonstrate that an evidentiary hearing is warranted. United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993) (citations omitted). An evidentiary hearing is not necessary when a §2255 Motion is inadequate on its face, or, although

6

facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case. See Moreno-Morales v. United States, 334 F.3d 140, 145 (1st Cir. 2003) (quoting United States v. DiCarlo, 575 F.2d 952, 954 (1st. Cir. 1978)); see also Rule 4(b) of the Rules Governing Section 2255 Proceedings ("If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the [court] shall make an order of summary dismissal.").

When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." McGill, 11 F.3d at 225.

A motion that is filed pro se may be construed more leniently than one drafted by an attorney. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Estelle v. Gamble, 419 F.3d 20, 106 (1976).

III. ANALYSIS

    A.   Mr. Plunkett's Conviction is Consistent With Dubin

Mr. Plunkett's primary challenge to his conviction is that he is actually innocent of aggravated identity theft under the Supreme Court's 2023 decision in Dubin, 599 U.S. 110. §2255 Motion, Dkt. No. 255 at 1-17. This contention is not correct.

7

A charge of Aggravated Identity Theft in violation of 18 U.S.C. §1028A requires proof that the defendant committed a predicate felony, which includes bank fraud, and without lawful authority used a means of identification of another real person in relation to that crime. See United States v. Berroa, 856 F.3d 141, 145 (1st Cir. 2017). The term "means of 'identification" is defined broadly to include names. Id.; 18 U.S.C. §1028A(d)(7) ("the term 'means of identification' means any name . . . that may be used to identify a specific individual."). The First Circuit has interpreted "the term 'use' to require that they defendant try to pass himself off as another person." Id. at 156.

Dubin involved a scheme by a doctor to overbill Medicaid that included using the names of his patients. See 143 S. Ct. at 1573. The Supreme Court wrote that "with fraud and deceit crimes, the means of identification specifically must be used in a manner that is fraudulent or deceptive. Such fraud or deceit can often be succinctly summarized as going to 'who' is involved." Id.

The Supreme Court held that "[a] defendant 'uses' another person's means of identification 'in relation to' a predicate offense when this use is at the crux of what makes the conduct criminal." Id. In Dubin the Court found that "[t]he crux of the health care fraud was a misrepresentation about the qualifications of petitioner's employee. The patient's name [that was used in the

8

fraudulent bill] was an ancillary feature of the billing method employed." Id.

In contrast, this is a case in which Mr. Plunkett's use of another real person's name was at the crux of his bank fraud crime. More specifically, his aggravated identity theft conviction was based on the following evidence. The Plunketts applied, in late 2017 and early 2018, for a $1,200,000 commercial mortgage loan for the Hyannis Port property from Velocity Capital ("Velocity") in Nancy Plunkett's maiden name, Nancy Matthews. To obtain a mortgage loan of $1,200,000, the loan had to be a commercial loan. Thus, Velocity required that the property be income-producing and not the residence of the borrower.

It was, therefore, essential to the Plunketts' fraudulent scheme that the commercial loan application be made by someone who did not reside at the Hyannis Port property that was to be the collateral for the commercial loan. It was also critical that the applicant be unconnected to Mr. Plunkett so that he could serve as closing attorney to conceal fraudulent aspects of the scheme.[4] Thus, despite their marriage of several years and the fact that Nancy Plunkett had long resided in the Hyannis Port property, the

---

[4] Among other things, in his role as closing attorney, Mr. Plunkett submitted a title report that falsely indicated the property was owned by Nancy Matthews and unencumbered by liens, a false loan application and supporting documents, including the falsified lease that is at the center of the aggravated identity theft count.

9

Plunketts falsely represented that Nancy Matthews was single and rented a residence at a Wellesley, Massachusetts address. The Wellesley address was actually that of a UPS Store where Nancy Plunkett rented a mailbox. However, Mr. Plunkett gave the lender falsified documents that showed Nancy Matthews leased a residence at that address and made regular rent payments for it. See R. 11 Hr'g Tr., Dkt. No. 127, at 41-45, 47-49. The falsified lease bore the forged signature of a real person, J.P. or Person #3, who was known to the government but not named in the Indictment, and who the Plunketts represented to Velocity was Nancy Matthew's landlord. Gov't Suppl. Opposition, Dkt. No. 266, at 11.

When Velocity sought documents to submit the loan application to underwriting, Mr. Plunkett, as closing attorney, provided documents certified under penalty of perjury by Nancy Matthews as borrower, that she did not intend to occupy the Hyannis Port property and that it was not, nor did she intend to make it, her principal residence. Among other things, she also represented that the loan would not be for personal, family, or household purposes.

When the Velocity loan processor requested a copy of the lease for Nancy Matthews' primary residence with the "last 12 cancelled checks to verify rent payments," Mr. Plunkett sent the falsified lease with a forged signature of J.P. as Nancy Matthews' landlord, and falsely stated that Nancy "pays monthly ($2,650) by ACH debit

10

from her account." Gov't Suppl. Opposition, Dkt. No. 266, at 10-11.

Therefore, the Plunketts made many material misrepresentations to Velocity. See Indictment ¶ 21(a)-(t). However, the claim that J.P. was the landlord of Nancy Matthew's purported residence and received regular monthly rent payments from her was essential to the success of the Plunkett's fraudulent scheme, not an ancillary feature of it. See id. at ¶ 21(d), (g), (s). Velocity would not have made the $1,200,000 loan if it had not been fraudulently led to believe that J.P. was involved as Nancy Matthew's landlord. Thus, the misuse of J.P.'s identity was at the crux of the fraudulent scheme. See Dubin, 143 S. Ct. at 1573-74. Therefore, Mr. Plunkett's conviction for Aggravated Identity Theft was consistent with the holding of Dubin assuming, without deciding, that Dubin was retroactive.[5,6]

---

[5] Mr. Plunkett's fraudulent conduct evidently did not end with his bank fraud conviction in this case. In support of his claim for relief under §2255, he cites numerous purported cases that do not exist. See Dkt. No. 255 at 11, 14-15. These include, for example, United States v. Murph, No. 22-1515, 2023 WL 3783245, at *4 (1st Cir. June 30, 2025).

[6] Because Mr. Plunkett's claim concerning Dubin is unmeritorious, it is not necessary for the court to discuss the government's other arguments that the §2255 Motion was improperly filed pro se and was untimely. See Gov't Preliminary Opposition, Dkt. No. 263 at 1-5.

11

### B. Mr. Plunkett's Other Arguments are Unmeritorious

Mr. Plunkett also contends that the court should vacate his "entire plea due to the serious defects in his convictions and sentence," including: (1) that his plea was not knowing and voluntary because it was improperly coerced by the government's threat to prosecute his wife unless he pled guilty to legally defective charges, including aggravated identity theft, and tax evasion. Dkt. No. 255, at 17-18; (2) the loss and restitution calculations underlying his sentence are grossly overstated by at least $500,000 to $2,500,000 because they fail to account for payments he made to the lenders before his purported scheme was detected, id. at 18; and (3) the "tax evasion charge is facially defective because it is based solely on the purported bank fraud conduct without any independent acts of evasion," id. at 19.

The government responds to Mr. Plunkett's first claim that, after the Grand Jury indicted both Mr. Plunkett his wife, the government offered the pair a "package deal" plea. Gov't Preliminary Opposition, Dkt. No. 263, at 13-14. As a result of the package deal, the aggravated-identity-theft charge against Mr. Plunkett's wife was dismissed, allowing her to receive a below-guidelines sentence of 18 months and avoid a consecutive 24-month sentence for aggravated identity theft. Id. The First Circuit has written that:

> The concern of the law is for voluntariness. If a defendant elects to sacrifice himself [to protect someone close to him] that is his choice and he cannot reverse it after he is dissatisfied with the sentence, or with other subsequent developments.

United States v. Mescual-Cruz, 387 F.3d 1, 7-8 (1st Cir. 2004) (internal quotations and citations omitted). This is such a case.

Second, the government contends that Mr. Plunkett, in his plea agreement, stipulated to the loss amounts that were applied at sentencing, and that the restitution imposed was based on the outstanding loan balances and, therefore, took into account any prior payments of principal. Id. at 15.

Last, the government responds that the Indictment alleges eight affirmative steps Plunkett took to conceal his income to prevent the Internal Revenue Service from assessing taxes due on it. Id. at 15-16 (citing Indictment, Dkt. No. 1 at ¶¶ 28, 38-39).

The court finds the government's arguments on these claims to be correct. See Preliminary Opposition, Dkt. No. 263, at 13-14. Accordingly, for these reasons as amplified in the Government's Preliminary Opposition, these claims are being denied.

IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c)(1)(B), a defendant may not appeal a final order in a §2255 proceeding unless the district court first issues a Certificate of Appealability ("COA") or the Court of Appeals authorizes it. This court may only issue a COA if a defendant "has made a substantial showing of the denial of a

constitutional right." 28 U.S.C. §2253(c)(2). A movant "satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). This standard presents "a low bar." Pinero v. Medeiros, 381 F. Supp. 3d 169, 171 (D. Mass. 2019). Nevertheless, a movant "seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." Miller-El, 537 U.S. at 338 (quotation marks and citation omitted).

In view of the low bar to obtaining a COA and the fact that Dubin is a relatively recent decision, the court is issuing a COA.

V.  ORDER

In view of the foregoing, it is hereby ORDERED that:

1. Mr. Plunkett's §2255 Motion (Dkt. No. 255) is DENIED.

2. A Certificate of Appealability is hereby ISSUED.

3. (a) The Petition of Third Parties Requesting a Hearing to Adjudicate the Validity of Interests in Properties Subject to Forfeiture (Dkt. No. 161); (b) Metropolitan Life Insurance Company's Motion for Hearing to Adjudicate the Validity of Interests in Properties Subject to Forfeiture (Dkt. No. 169), and (c) the government's Motion for Writ of Entry as to Barry Wayne

Plunkett, Jr., Nancy Plunkett (Dkt. No. 174), are each DENIED as MOOT.

/s/ Mark L. Wolf
UNITED STATES DISTRICT JUDGE